Your Honor, the first case of the morning is called 213-0351, People's State v. Bryan Adams. On behalf of the defendant, and doing her last oral argument prior to her retirement, Ms. Amy Hamel. On behalf of the people, Ms. Richard Wood. Okay, good morning, Ms. Hamel. You better make it good. Actually, I was more inclined to make it sloppy, so I hope we can get through it. You may proceed. Good morning, Kathleen Hamel, representing the defendant appellant, Bryan Adams. Mr. Adams stands convicted after a jury trial of the first degree murder of Margaret Atherton. On September 11, 2009, Ms. Atherton was found in her upstairs bedroom of her home with her wrist bound, a pillowcase secured over her head, and some socks stuffed inside of her mouth. She had died of asphyxiation by strangling. There was no evidence of manual strangling, so apparently it was the effect of the socks and the pillowcase. The centerpiece of the state's case against the defendant was his own confession, which was elicited from him after 20 hours of interviews. This morning we argued, we raised two points. One is that the motion to suppress the confession should have been granted, and our second position is that commentary that was made by Police Chief Danny Langloss while the video recording of the confession was being shown to the jury rendered the trial unfair. Let me ask you one quick question before you get going. Are we able to consider not only the testimony at the hearing, but also the testimony at the trial when making our determination? Yes, yes. Your client did not testify at the motion to suppress, correct? That's right. So your position is that we should infer that his confession was produced as a result of false promises as opposed to any live testimony that he was feeling that that promise was going to be kept. Well, I guess what I would ask you to do is to focus on what happened and whether or not the police conduct was such that it was inappropriate because it did in fact elicit a confession, which he actually states on the tape of the confession, you fooled me. So we know that in his view, what he was told to produce it. You recognize that using deceit, making overtures of leniency, those are factors, but you can't determine that a confession is involuntary solely because there's an offer or a scenario put forward, correct? I do, I do. And what we do is we are distinguishing cases in which that sort of thing has been found to be acceptable from a case like this one where we feel that Langloss crossed the line when his promises of leniency were actually misstatements of the law. Where did he misstate the law? He basically left out the part that murder can be convicted by someone who acts knowingly and who's asked to create a strong probability of great bodily harm or death. That's an interesting point, but your client in the first three interviews never bought that. He never accepted that that was a viable scenario, correct? I mean, he terminated the last conversation, ends, he's charged, brought to the jail, and it's only when he can't make a phone call that he contacts the chief and wants to have further communication, correct? Yes, that is true. At that point, wasn't he already charged with first degree murder? Yes, yes. However, what the police chief was telling him is that that was the incorrect charge based on these facts and were you to confess to these facts. Well, didn't he always phrase it as if this is what happened, then murder would be an inappropriate charge? He did, that's true, but he also basically told him this is what happened, that we know this is what happened, that this can only be charged as murder. He would waffle back and forth over that improper line. But he also told him, I'm sorry, Justice Gorbachev. Go ahead. He never said this is what happened. I mean, didn't he always phrase the questions in terms of if this is the scenario, if this is the truth, if things came out the way we think or the way we discussed, isn't that keeping him on the? You know why it doesn't? It's because he would follow that up with then it can only be involuntary manslaughter. And the truth of the matter is it could have been involuntary manslaughter, but it also could have been knowing murder. And he just did not tell him that. So he managed to wear down a rather seasoned guy with a combination of misrepresentations about what these sort of facts would amount to in the eyes of the law and a lot of buddy guy behavior that was rather offensive. Your client had been to the penitentiary three times before this, and your client clearly knew that the police did not make charging decisions. In fact, the chief told your client that I ran this by the state's attorney, and the state's attorney rejected it. It's going with first-degree murder, correct? He did. But then he also said that, you know, he's arguing. And any experienced criminal knows that the state's attorney calls witnesses, not the chief of police. I mean, it's a scenario that obviously your client wasn't buying, but, you know, for whatever reason he decided at the last minute, maybe I'll go with this. Well, the only conceivable reason, though, is because he finally became persuaded by this barrage of promises and misrepresentations. I mean, this police guy, it was not just some detective. It was the police chief, and he pointed out a couple of times. Think of what this looks like, you know, having the police chief on your side. One of the things that the police chief said, he did not get a confession from your client until your client reinitiates the conversation. Well, it appears that what happened is that, you know, the second session ended with the, well, near the end of it, they informed him that he had been formally charged. Right. And so then he must have slept on it. And he did have one more session in which things just didn't, you know, it was kind of that impasse they were at. And he continued to deny even a relationship with the victim. Then he apparently decided, well, I'll, you know, I'll go with what they're saying. If I can get a phone call. Yeah, yeah. I don't think the record supports a conclusion that he, this was all about a phone call. I think he was just trying to get a little advantage before he went ahead. Or do you agree that he reinitiated the conversation? Oh, definitely. Yes, there's no question. If we were to agree with you that the confession was involuntary because of a false and misleading promise that could not be kept, what's your argument? In your brief, you argue that it's not harmless error, but the evidence against your client is overwhelming. When you say that circumstantial evidence is pretty compelling. He is seen outside the home. He has access. He stole the car. He's found in the car. The plate is, it is the car. It's seen at the Wal-Mart. He's identified at the Wal-Mart by his former girlfriend. His vehicle is seen near the dumpster where the person recovered. He cannot be excluded from the blue towel. He's captured on tollway video. That's a very compelling case. And in addition to that, you have his admission that's overheard by a corrections officer when he's on the phone with Cassandra Brown. You have all these other statements and conduct of your client. Even if we suppress the confession, how is that not harmless error? I don't think he admitted anything to Cassandra Brown, really. Which is an admission. Well, of sorts. I'm sorry. I think the heart of the case remains the confession. That is the strongest evidence of all. That's the thing that all these things do tend to corroborate. They strongly corroborate it. He was already charged before he confessed. This is not a case where the government, the state's attorney, was putting all his money or her money on a confession. They decided we have enough evidence to convict. This is the charge of first-degree murder. They were done until your client picked up the phone and said, I want to talk to the chief again. That's true. So how can you say it's the centerpiece of the case when that's not what they charge the case under? Well, because all of this stuff, all the circumstantial evidence, though strong, was still, we don't know what happened inside of that house. And he could have had an explanation. We know that the victim was found face down with a sock in her mouth, a pillowcase tightened over her, and her hands are bound behind her back. That's what we know. Does that suggest, as the chief acknowledged and admitted, that there's no way this is an accident, there's no way this is involuntary manslaughter? It does suggest that. Which cuts against the state's argument that the chief was just presenting a scenario that's plausible, because it's not plausible. Well, part of this, too, is that we have to look at what bad cases make good law. We have a situation here where what the police chief did was so close to the line of improper. And this is a guy who, in his own testimony, said that he trains other police officers. He is running around the state training police officers to behave in this sort of way. And we have, I think that alone is a matter of great concern in this case. Ms. Hamel, let me ask you if you can, because your time is running out, so let me ask you to move along to the commentary of the officer at the trial with respect to that video. Now, our problem there is simply that, of course, Langlois was on the stand while the prosecutor played the video of the portion of the interview in which the defendant confessed, and that the prosecutor stopped the video frequently to allow Langlois to comment on the effects that he thought his tactics were having on the defendant. So it's sort of a play-by-play explanation for how he is manipulating and mesmerizing the defendant into breaking down and confessing. Isn't that a proper method of direct examination for a prosecutor? Say, for example, it was an oral confession for a prosecutor to ask the witness who takes the confession to say, why did you do this or why did you ask that question? Isn't that appropriate? Well, that's really what's going on here, though. What Langlois is doing, it's not so much explaining why he asked the question. It's explaining the effect that he says his questioning is having. And so he's commenting on the witness. He's commenting on the evidence and giving his opinion that here it comes. This is very significant. What he's saying now really matters. And that is inappropriate because witnesses cannot comment on other evidence in the case unless they're experts. It's kind of like those Saturday afternoon movies where they have the guy explaining science theory. We used to call him, there was a guy called Rage Kordak who used to be there. Yes, it does bring that to mind. And it's really, he's basically, it's sort of like in the Henderson case that we cite. There it was all a detective commenting on body language. Here he's commenting on the entire thing, on every aspect of the defendant's behavior while he's being brought to confession, I guess you'd say. It's kind of like a human lie detector or a human truth serum is the way he's presenting himself. Even if there were error, how would that affect the outcome? Assuming that the confession, we ruled the confession was not involuntary and that we sustained it. Well, the one thing is that he actually says that, because if you think about it, this isn't 100% of a confession. Because the confession, it's kind of a partial confession. He confesses and he does it, but he tells it in the story that Langlois has already fed to him. And so Langlois offsets that problem by saying, being allowed to say, I don't believe, I didn't believe that, I don't believe that now. That this couldn't, no way this could have been an accident, he opines. And that's not appropriate for a witness, a police witness to do. So his tactics were blatantly unfair and we would ask that you reverse. Thank you. Thank you. Good morning, Your Honors. Good morning, Mr. Ponder. Your Honor, indeed for the first issue, the question is the totality of circumstances and was the defendant's will overborne. The trial judge found, contrary to defendant's position, that the only conceivable motive for confessing was not the alleged false assurances, but was indeed defendant confessing in exchange for the conditions that he set. Let's talk about the alleged false assurances. Is it proper for the officer to do what he did, in this case the chief of police, to present a completely false scenario to get a confession? Is that proper? Is it proper or is it illegal? Is it proper, first of all? I probably wouldn't recommend it if they called and asked, but it has been found time and again. Yes, you can use trickery and deceit to obtain a confession. What if the defendant was 16 years old? Completely different circumstances. But let me suggest that in Valley, this court pretty much found in circumstances very similar to that. Valley is very similar to our case, even more egregious, however. In Valley, there was almost identical circumstance, except you had a young defendant. You had a defendant that did not have a criminal background. Defendant alleged that he didn't get food, didn't get water, didn't have enough sleep. He was crying. He was intimidated. He was being yelled at. They were directly in his face while questioning, and he even said, what do you want me to say? If I say what you want me to say, are you going to give me a lesser sentence? And they said, yeah, if you tell us what we are suggesting is an accident, when they had similar facts, they certainly knew it was not. If you tell us it was an accident, then that might be self-defense. Again, as I say in my brief, it probably would have been necessity, not self-defense, because they were alleging that he was doing it to protect himself. In almost identical circumstances, with almost identical language, the court there said the error was harmless because the evidence was overwhelming and the police were allowed to use trickery. You're allowed to use trickery and deceit, but critical misinformation? Isn't this critical misinformation in this case? Not really. The language specifically, each time, said if. He never said there are or are not other methods. He said if it's premeditated, then that's first-degree murder. If it was an accident, he doesn't have to say that we have facts sufficient here. Well, he also omitted, and Ms. Hamill pointed out in her brief and here, he omitted… Other methods of charging definitely. He completely omitted that, and it's clear that he misrepresented the law. What about the Florida case, Light v. State, where there's a material misrepresentation of law by a police officer to extract a confession? Again, is leaving out additional, is that a material misrepresentation? Since it's there, he lied. He told them this is a plausible theory. You could be charged with involuntary manslaughter. He said if it's an accident. And at trial, he admitted and he said there's no way this is involuntary manslaughter. Based on the physical evidence, that's what he testified to at trial. Yes. If he had said, given the facts of what we have, that the pillowcase was tied so tight that you tied our hands, and then if he said, even under those circumstances, if you didn't intend, it can still be involuntary, that would be a misrepresentation of law, and we potentially would be most likely to lose. Here, he didn't. You seem to acknowledge that if the defendant had been younger, inexperienced, maybe the outcome would require suppression. The outcome would be a lot closer. But, again, in Valley, where we had very similar circumstances, including a similar misrepresentation of the law, and I would say it wasn't a misrepresentation. Again, it was suggesting if the scenario is as we're suggesting, in Valley, as in here, they knew that it wasn't. That is the misrepresentation or trickery of facts. Yeah, they have the information here. And, indeed, as soon as Langlos left, the second detective came in and said, wait a second. Now that you've confessed, I have a problem. Why? Because we found evidence that the pillowcase was on so tight that we had to cut it off. So it couldn't be. It is important, though, in this case, that we don't have a young defendant. We don't have an unsophisticated defendant. Defendant, the defense concedes that there was no other factor that, unlike Valley, that would have lent towards a finding that totality of circumstances would show an involuntary confession. And it is very important, as this Court has at least asked, that defendant initiated this last... A third. A third, possibly even a fourth. I think it was actually four. But, yes, there were 17 or 18 hours prior to this last encounter. But 17 or 18 hours of questioning, too. I mean, he was questioned for long periods of time late into the night. Long periods of time, but with more than sufficient times of rest and eating and sleeping. So, yes, it was 17, but it was over three or so days, three or four days. You didn't cite a case that I found, and I'm familiar with, people versus McDaniel, where a former police officer was interrogated. I did the interrogation for 18 hours. But what I said to him was, if you get up right now and walk out, he wasn't in custody yet. If you get up right now and walk out, you still might be indicted for first-degree murder as a way to keep the defendant there. Not lying to him, but telling him, based upon the evidence, you may be charged with first-degree murder. Why did the chief use... I mean, he completely turns that around and lies and says, you know, this could be involuntary manslaughter. And then in his explanation, omits the second portion of the first-degree murder statute. That's a completely different scenario. I don't know why he did it. The question is... Why should that be tolerated? Why should it be tolerated? I mean, again, if this court were to choose to admonish the chief and say, in future, this should not be done, that might be appropriate. Would it be nice if we could give advice to the defendants? Would it be nice if we could give advice to the defendants, to be honest? But the question is... On what you can do, why didn't you address the harmless error analysis that the defense put in their brief? I'm sorry? Why didn't you address harmless error? Why didn't we? Right. I actually thought that we did in basically saying that the evidence is not closely... Where in your brief? I think on the second issue, when saying if error... I'm sorry. It is towards the end, but page 16. So that's basically your argument, is you step back and think the evidence here is just simply not close. It isn't. The evidence is overwhelming. Again, the evidence, if we take... If we don't consider the confession, the circumstantial evidence itself is fairly overwhelming. We did have an implicit admission. We have the defendant on tape by people that knew him, identifying him, identifying the clothes he was wearing. The same clothes he was wearing in the tape are clothes that were found in the car. We have the car that he had sole access to. We have the videos of him disposing of items that were in the house and that were identified by the victim's family as being items taken from the house. We have the tollway video showing that the car was indeed in or around Dixon at that time. If for the second issue we then also assume that the confession is found to be voluntary, obviously it's even that much stronger. The evidence here is overwhelming. It's not closely balanced. Let's move on to the next issue of the commentary by the chief during the videotape being played. How is that proper? The cases seem to suggest that if there's comments on the past as opposed to present view of what a defendant said, that that is not error. Well, how do you distinguish Henderson that Ms. Hammer relies on? Well, the distinguishing factor in Henderson is that even though the court found error, they found that the error wasn't reversible. So, again, assuming our innuendo that we do find error, the Henderson case, which again is very similar as Valley was in the first issue, that is the distinguishing factor in Henderson is that despite error, once again, the error is harmless. You can't have plain error when the evidence is overwhelming. And assuming for argument's sake we were to find that the confession is voluntary, the evidence is, you know, is more than overwhelming. It probably is more than strong enough even if the confession were, if this court were to find it's not. With the confession, it's unquestionably. So you're saying even if we find that the commentary by the officer was improper, the evidence is overwhelming. Correct. And that's exactly what Henderson stands for. So, to be honest, I mean, Henderson decided for the proposition that it's error. And if this court were to find that, but it also stands for the proposition that who cares. If the evidence is strong enough, which it is in this case, then notwithstanding the error, the court should affirm. Well, this might be our opportunity, if we were to follow your lead, to tell the officer, hey, that's improper. However, in this case, the evidence was overwhelming. How would you submit that that, what the officer did was improper for us to give him that advisory opinion? I mean, basically, Henderson, again, I'm not sure it is an advisory opinion. I mean, Henderson says just that, says it is improper. I don't think it is an advisory opinion for this court. No, it wouldn't be. This court does it in context of prosecutorial misconduct. That's what I'm asking. I'm asking how do we tell him? I think just saying what the court has done in prosecutorial misconduct cases. Say, you know, this is error. We've seen it in Henderson. We potentially see it again here. We are suggesting that if in the future, if this conduct continues, we might find that despite the overwhelming nature of the evidence, you know, we are not going to be quite as willing to affirm the decisions and put everyone on notice that from this point on, that is going to be more of a concern. Obviously, in prosecutorial misconduct cases, that still is a balancing issue for the court. But if you find that the conduct in future is so egregious, you will at least have stated on the record and warned all the parties that this type of conduct will not be allowed. Well, the warning should already be out there. I mean, prosecutors should know when you're putting on a witness, you cannot ask inappropriate questions. You can't ask a witness to comment on the credibility of something another person is saying, whether it's a defendant, whether it's another witness. You just can't do it. Again, we have cases that say that, and no one disagrees. The question is, and I don't know how carefully prosecutors sit there and say, hmm, should I put this witness on? How far should I go? Or if in the heat of the moment, they do it. However, we're not talking about prosecutors here. We're talking about the police officer. Let's stick to the police officer. But I felt we were talking about the prosecutor that elicited stop the tape. So it really is the prosecutor that's doing it, because he's the one that played the tape, stopped the tape, asked the question. I mean, the police officer really is just doing what he was questioned and asked to do. He's performing the way it was rehearsed before trial. I've never been a trial prosecutor. Any trial lawyer knows that if you're going to interview your witnesses prior to trial, you know what they're going to say. Yes. Again, you would be kind of stupid as the world is. Did you watch the entire DVD? Yes. How many times did Chief Langless falsely promise the defendant that he could possibly face involuntary manslaughter charges? I do not have a specific amount of times. More than five? Yes. More than ten? Yes, I believe so. I'm not positive again. It was a great number of times. It was definitely a good number of times. For the reasons that, again, defendant initiated the conduct, the trial judge found that the statements were not involuntary, but were indeed an attempt to obtain treatment that he wanted, a deal. And the fact that the evidence here was overwhelming, including the confession, which was not spoon-fed, unlike Valley, which the defendant did relate evidence that was not told him, despite the fact of the, again, we'll agree to disagree whether it was a misrepresentation or an understatement or lack of stating the law. And again, let's face it, in this case the difference is defendant was arraigned. He had an attorney. It's his attorney's job to tell him the ramifications of what the law is. He knew he had been arraigned for first-degree murder. Langless had said, may I finish my thought? Langless had said, we were done with him. We had no intention of any further conversation. When he initiated the conversation, at that point in time, Langless carried on, but specifically said, are you sure you don't want to talk to your attorney? You've now been, specifically, you've now been arraigned. It's not the same status it was before, and defendant says, yes, I want to talk. And he told him, I've already run it by the state's attorney, they're not buying it. And even after, and someone commented, even after he made the comment, you have me, you fooled me, defendant still didn't shut up. Defendant talked for almost another hour after that, further implicating and suggesting things that occurred. So the fact is, what are the police to do? In essence, you have a defendant that says, stop me before I confess again. I mean, he wouldn't shut up, he confessed, the police allowed him to hang himself. There's another theory, he was worn down. Again, yes, that could be a theory, but he didn't testify to that fact, and the trial judge made specific findings that, indeed, he was not. Thank you, Your Honor. Ms. Hanlon. This is it. Yes. I just want to say that it seems like do we need to add something to Miranda then? Do we need to add to the Miranda warnings, don't believe the police if they tell you anything about the law? Because otherwise, I think if this sort of behavior is acceptable, then we will have a continuing problem like this. Speaking of Miranda, in doing a little more research on this case, I ran across a case, People v. Approved, 66 Illinois 2nd 470, and I did not sight check. It's an old Illinois Supreme Court case. In that case, there were two juveniles who were both arrested for a robbery shooting, and they were interviewed by the police after they signed a Miranda form. And the Miranda form that they signed, in part, read, should the juvenile court find that I have committed the offense and then enlist the consequences, which included correctional school, et cetera. There was a motion to suppress. The trial court suppressed the statements. The appellate court upheld the suppression on different grounds, finding that it was improper because they were never told they could be prosecuted as adults. It actually turned out it's a murder. And the Supreme Court said voluntariness depends not on one factor, but upon the totality of the relevant circumstances. And the court said, quote, it was clear a grave crime and not some minor violation was involved, and awareness of potential responsibility under the circumstances here could properly be imputed to the defendants and to reverse the appellate court. Here, I mean, this is what happened here is much less egregious than what took place in Approved, where these two kids are falsely told they're going to be charged as juveniles, and they face adult murder charges. And the court said that that was only one circumstance and did not result in an involuntary confession. How is that different than this case? Well, I would say that the law needs to be a little more sophisticated. There are more recent cases in which similar things have happened. I know I cited, I think it might be Travis, where a very similar thing happened, and that was found to be error, and then also that Florida case that I discussed. But Travis also involved youthful offenders, correct? Yeah, the Travis one was, I'm pretty sure. Yes, because that was where they were told, the defendant was told that his case would remain in the juvenile system, and that was impossible. He was 15 years old. But I also wanted to point out that the misrepresentations of the law were not only, it wasn't only saying these facts could be involuntary manslaughter. It was telling him that murder is premeditated and intentional, you know, the kind of murder that happens in a murder mystery book. And that is... Didn't he show him the statute? Pardon? Didn't he show him the statute? Yeah, he did. He read it through, but he never discussed the middle part, and he repeatedly said, well, this isn't intentional. We can see this wasn't premeditated. You didn't go in there meaning to kill her. So, you know, that puts murder out of our consideration, and that just wasn't true. As to the second part of our second argument, the prosecutor's behavior actually is what it comes down to, we are, you know, perhaps there are cases in which this is found to be error but not reversible, and perhaps it needs to be found to be reversible error in order for prosecutors to take heed. And so for that reason alone, we would ask you to give us relief on the second one, if not the first. Thank you very much. Good luck to you. Thank you. Thank you so much, both of you, for your argument. We will take this case under consideration, render a decision in due course. Court is in recess until the next court hour.